COOPER<br>*v.*<br>HARRISON.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## J. D. CHRISTIAN *v.* J. MONETTE.

When the consideration of the assignment of a judgment by *A.* to *B.* was, that *B.* might avail himself of the judgment to compensate certain unmatured' notes due by him to *C.*, the judgment debtor, and *B.* promised and undertook to pay the amount of said notes when they become due to *A. Held :* That the contract might be enforced by *A.* although the notes were not in his possession.

Where a party is aware of the injury that may result to him from a compliance with his part of the contract, and yet voluntarily enters into it, he cannot afterwards require an indemnifying bond, and if a bond was given at the time of the contract, he can require no other, even if its amount is insufficient to protect him against loss.

APPEAL from the District Court of Morehouse, *Richardson*, J.

*McGuire & Ray*, for plaintiff and appellant. *Newton & Hall*, for defendant.

COLE, J. The points in this case will be more easily comprehended by an examination of the facts.

*James Monette*, defendant, owed *Charles J. Gee* two notes, each for $375, one due 1st March, 1854, the other 1st of March, 1855, with eight per cent. interest per annum after maturity.

*Joseph D. Christian*, plaintiff, was the owner of a judgment against the said *Gee*, for $1,696 80, with eight per cent. per annum interest, from the 27th of May, 1847.

*Christian* proposed to *Monette* to transfer to him the judgment, if *Monette* would pay him the amount of the two notes he owed *Gee*. This proposition was accepted.

*Christian* then transferred to *Monette* the judgment, and in the act of transfer *Monette* agreed to pay to *Christian* the several notes which he had executed in favor of *Gee*, as the same respectively fell due, &c. It was further stipulated in the act of transfer, it was the intention of the parties, that *Christian*, by this assignment, shall enable *Monette* to compensate the said notes against *Gee*, and *Monette* was to pay the two notes herein mentioned to *Christian*, at their maturity, in consideration thereof.

In document A, which was the written contract between the parties, there is nothing said about a bond to be executed by *Christian* to *Monette*, to guarantee his part of the contract.

It appears that on the same day of the execution of contract A, *Christian*, with *W. H. Gallaspy*, as his security, executed a bond in favor of *Monette* for

$500, which, after reciting and referring to the contract A, stipulates that: "If the said *Joseph Christian* shall well and truly defend and save harmless the said *James Monette* against any suits, or actions at law, which the said *Charles J. Gee*, or any one else pretending to be his assignee of the said notes, may institute against said *Monette*, on account thereof, as arising thereout or therefrom, and shall assume and pay all the costs, damages and expenses of litigation of whatever nature and kind having relation thereto, then this obligation to be null and void, otherwise to be and remain in full force and virtue as a penal obligation."

*Monette* having failed to pay according to said contract, this suit was instituted against him by *Christian*, on the contract A, for $750; the amount of the two notes given by *Monette* to *Gee* for $375 each, with eight per cent. interest from maturity.

It was tried before a jury, who rendered a verdict for the amount due, but affixed a condition that plaintiff should secure the defendant " with an indemnifying bond for double the amount at issue, with good and sufficient security in this State and parish to indemnify the defendant against those *Gee* notes, if ever presented; the date and amount of each note to be specified in the bond; that the bond to be executed in five days after the adjournment of court, or the contract be null and void and of no effect."

Plaintiff has appealed from the judgment on account of this condition, and we are of opinion, that the jury had no right to annex it to their verdict.

The rights and obligations of contracting parties must be determined by their contracts, and the law applicable thereto.

An examination of the contract A, shows that plaintiff did not have or expect to have the *Gee notes* in his possession at their maturity; but notwithstanding that, defendant was to pay plaintiff the amount of them, so no deception was practised by plaintiff or his counsel, on defendant. Besides, the question of off-set or compensation is one of law, and defendant cannot plead ignorance of the law. Besides, there is no stipulation in the contract A, that plaintiff was to give security to the defendant to insure the performance of his part of the contract; yet, as the bond B, was executed at the same time with the contract A, for the purposes therein stipulated, and left with said document A, in the possession of *Robertson*, by consent of both parties, it is justly to be presumed that plaintiff did give the bond B to defendant, and that it was accepted by him as satisfactory at the time.

*Robertson* testifies: "The documents A and B were written by me, and I saw the parties sign them; they were executed at the same time in my office; *Monette* was present when the documents were left by consent of both parties in my possession; they were obtained from me by the counsel of the plaintiff in this case."

The security on the bond resided in Arkansas at the time the bond was signed; defendant cannot then now object that he is a non-resident.

We would also observe, that defendant, by signing the obligation A, has acknowledged the transfer to him of the judgment therein spoken of, and agreed to pay the price stipulated.

A mere allegation of his, that the consideration has failed, unsupported by any evidence whatever, does not throw on plaintiff the *onus* of proving the consideration, or of showing it was what it purported to be on the face of the contract.

There is nothing to establish that " *Gee*" is not still the holder of the notes ; on the contrary, it would appear that he is ; at any rate, the evidence is such that *Monette* might defeat any action that *Gee* or any holder of these notes might bring against *Monette* on them, by having them compensated by the judgment transferred to *Monette*.

*Bobo*, a witness, shows that " *Gee*" sent him copies of the notes to have them collected after they were due.

It should also be observed, that the last of the " *Gee* notes" matured the last of March, 1855, and no suit has yet been instituted against *Monette* on either of them ; so the contingency has not yet happened when defendant could call on plaintiff to defend him against said notes, as he obligated himself in the bond to do.

It is also objected, that after the agreement of transfer, defendant became dissatisfied with the arrangement ; and plaintiff then brought suit in his own name upon the judgment against *Gee*, and made defendant, *Monette*, party as garnishee.

This suit was intended to reach the notes in the hands of *Gee*, or to effect a legal seizure of them, and to free *Monettee* from any liability on them, upon paying the amount to plaintiff.

It was also instituted at the request and for the benefit and protection of defendant, as appears from the testimony of *Robertson*, who declares :

"When the defendant's first note mentioned in the agreement fell due, I applied to *Monette* for *Christian* for payment. *Monette* expressed an unwillingness to pay, because he did not consider himself safe in making that payment, because the note was not in my possession, and was understood to have been sent by *Mr. Gee* to *Mr. Archibald McJuer*. *Monette* suggested to me the propriety of instituting such an action as I afterwards did bring against *Gee*, for his protection. I then filed the papers in that suit, which is the suit of attachment against *Gee*, making *Monette* the garnishee for the amount of the note, propounding interrogatories to him as garnishee."

" *Mr. Monette* did not express any dissatisfaction with the first arrangements, but thought they were not safe enough for his protection, for the notes which he had given to *Gee*, referred to in the agreement."

This evidence shows that defendant cannot avail himself of this suit as a defence in the action at bar. It was instituted at his suggestion, and can only be regarded as a desire on the part of plaintiff to do any thing that defendant might propose for his protection.

We are of opinion, that when a party is aware of the injury that may result to him from a compliance with his part of the contract, and yet voluntarily enters into it, he cannot afterwards require an indemnifying bond ; and if a bond was given at the time of the contract, he can require no other, even if its amount is insufficient to protect him against loss.

Plaintiff is then entitled to have the judgment amended as prayed for.

It is, therefore, ordered, adjudged and decreed, that the part of the judgment which requires plaintiff to furnish an indemnifying bond, be avoided and reversed ; and that the judgment be in all other respects affirmed, with costs.